# In the United States Court of Federal Claims

No. 19-1891C

(E-Filed: July 27, 2020)[1]

|                                           |   |                                                                                                                                              |
|-------------------------------------------|---|----------------------------------------------------------------------------------------------------------------------------------------------|
| ANHAM FZCO,                               ) |                                                                                                                                              |
|                                           ) |                                                                                                                                              |
|     Plaintiff,        ) |                                                                                                                                              |
|                                           ) |                                                                                                                                              |
| v.                                        ) |                                                                                                                                              |
|                                           ) | Motions for Judgment on the Administrative Record; Corrective Action Standard of Review; Agency Bias; Permanent Injunctive Relief. |
| THE UNITED STATES,                        ) |                                                                                                                                              |
|                                           ) |                                                                                                                                              |
|     Defendant,        ) |                                                                                                                                              |
|                                           ) |                                                                                                                                              |
| and                                       ) |                                                                                                                                              |
|                                           ) |                                                                                                                                              |
| KGL FOOD SERVICES WLL,                    ) |                                                                                                                                              |
|                                           ) |                                                                                                                                              |
|     Intervenor-defendant. ) |                                                                                                                                          |

Richard P. Rector, Washington, DC, for plaintiff. Dawn E. Stern, Thomas E. Daley, Washington, DC; Eric J. Marcotte, Arlington, VA; and C. Bradford Jorgensen, Austin, TX, of counsel.

Daniel S. Herzfeld, Trial Attorney, with whom appeared Joseph H. Hunt, Assistant Attorney General, Robert E. Kirschman, Jr., Director, and Douglas K. Mickle, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. Daniel K. Poling, R. Zen Schaper, Gale Furman, and Cathleen Choromanski, Defense Logistics Agency, of counsel.

John E. McCarthy, Jr., Washington, DC, for intervenor-defendant. David C. Hammond, Mark A. Ries, Robert J. Sneckenberg, Charles Baek, Jared Engelking, Sarah Hill, Nkechi Kanu, and Gabrielle Trujillo, of counsel.

---

[1] This opinion was issued under seal on July 9, 2020. See ECF No. 87. The parties were invited to identify any competition-sensitive or otherwise protectable information subject to redaction. The parties' proposed redactions were acceptable to the court. All redactions are indicated by brackets ([ ]).

OPINION

CAMPBELL-SMITH, Judge.

Plaintiff filed this bid protest to challenge "the corrective action being taken by [the Defense Logistics Agency (DLA)] in response to this Court's August 29, 2019 decision that granted, in part, [plaintiff's] challenge to DLA's award of the Subsistence Prime Vendor-Iraq, Jordan, and Kuwait . . . contract to [intervenor-defendant] under Solicitation No. SPE300-15-R-0042" (the solicitation). ECF No. 1 at 1. The parties' cross-motions for judgment on the administrative record (AR) are now before the court.

In ruling on these motions, the court has considered the following: (1) plaintiff's complaint, ECF No. 1; (2) the AR, ECF Nos. 34-49, 61; (3) plaintiff's motion for judgment on the AR, ECF No. 57; (4) plaintiff's memorandum in support of its motion for judgment on the AR, ECF No. 58; (5) defendant's cross-motion for judgment on the AR and response to plaintiff's motion for judgment on the AR, ECF No. 63; (6) intervenor-defendant's cross-motion for judgment on the AR and response to plaintiff's motion for judgment on the AR, ECF No. 64; (7) plaintiff's response to defendant's and intervenor-defendant's cross-motions for judgment on the AR and reply in support of its motion for judgment on the AR, ECF No. 65; (8) defendant's reply in support of its cross-motion for judgment on the AR, ECF No. 66; (9) intervenor-defendant's reply in support of its motion for judgment on the AR, ECF No. 67; (10) plaintiff's notice of supplemental authority, ECF No. 70; (11) defendant's response to plaintiff's notice of supplemental authority, ECF No. 73; and (12) plaintiff's reply in support of its notice of supplemental authority, ECF No. 76.

For the reasons set forth below, plaintiff's motion for judgment on the AR, ECF No. 57, is **DENIED**; defendant's cross-motion for judgment on the AR, ECF No. 63, is **GRANTED**; and intervenor-defendant's cross-motion for judgment on the AR, ECF No. 64, is **GRANTED**.

I.   Background

In this case, plaintiff challenges corrective action taken by the DLA following a ruling from this court on August 29, 2019, that the DLA's evaluation of intervenor-defendant's warehouse facilities was arbitrary and capricious. See ECF No. 1 (citing this court's opinion in a previous, related protest action, ANHAM FZCO v. United States, 144 Fed. Cl. 697 (2019)).[2] Plaintiff summarizes its present complaint as follows:

---

[2]   In ruling on plaintiff's previous protest, the court wrote extensively on the details of the solicitation at issue and the history of the procurement process. See ANHAM FZCO v. United States, 144 Fed. Cl. 697, 703-09 (2019) (issued on August 29, 2019, and re-issued with

> Despite this Court's careful holding, which ruled in favor of ANHAM <u>only</u> as to DLA's evaluation under one technical evaluation factor, DLA has decided to reopen this complicated procurement and accept revised technical price proposals from all offerors rather than address the discrete error identified by the Court. This is precisely the type of overbroad and unreasonable corrective action that is impermissible under the Court's precedent.

<u>Id.</u> at 1.

The court's August 29, 2019 decision permanently enjoined the DLA's contract performance, directing as follows:

> The United States, by and through the Defense Logistics Agency, its officers, agents, and employees, is hereby **PERMANENTLY RESTRAINED AND ENJOINED** from continuing with transition activities and from obtaining performance from KGL Food Services, WLL, under Contract Number SPE300-18-D-4032, except to the extent that such activities are required under a bridge contract or other solution designed to ensure the continuous availability of the supplies or services provided for under the contract[.]

<u>ANHAM</u>, 144 Fed. Cl. at 726. On September 10, 2019, the DLA awarded a bridge contract to intervenor-defendant for a four-month base period—September 10, 2019, through January 9, 2020—followed by two three-month option periods. <u>See</u> ECF No. 46-1 at 108.

Also on September 10, 2019, the DLA executed a corrective action memorandum designed to address the evaluation error identified by the court. <u>See id.</u> at 61-62. The memorandum stated, in relevant part:

> 7. After the [Court of Federal Claims (COFC)] rendered its decision, several meetings and discussions were conducted within DLA to determine the best course of action and way forward regarding the procurement under Solicitation SPE300-15-R-0042.
>
> 8. As a result of those discussions, a determination has been made that conducting a limited reevaluation of proposals, in a manner consistent with the COFC's decision, and rendering a new source selection decision is the corrective action that is in the best interest of the Government. That corrective action will incorporate the decision of

---

redactions on September 20, 2019). This opinion will recite only the facts relevant to the disputed corrective action presently before the court.

3

       the COFC, and thereby preserve the integrity of the procurement process, but will do so in an expeditious manner, thereby reducing the impact to the warfighters, and other authorized customers, supported by this procurement.

9. As part of this corrective action, DLA Troop Support will reevaluate, at least, the proposal from KGL, in light of the COFC's decision. Based on any reevaluations, DLA Troop Support will also complete an addendum to the Price Negotiation Memorandum, obtain a new recommendation from the Source Selection Advisory Council, and document a new source selection decision in a Source Selection Decision Document. Once a new award decision is rendered, any other necessary procurement activities, including a responsibility determination, will be conducted.

10. While the corrective action is ongoing, DLA Troop Support will ensure the balance of the procurement is reviewed and any additional areas of concern are appropriately addressed.

11. Given the limited nature of the corrective action, and the interest in resolving this matter expeditiously, DLA Troop Support anticipates being able to complete this corrective action by mid-December 2019.

Id. at 62.

      On October 11, 2019, the DLA sent letters to the seven offerors announcing the corrective action. See id. at 76-82. Therein, the DLA informed the offerors that, "[a]s a result of the recent COFC decision, DLA will be conducting corrective action," and that proposals would be "reviewed and evaluated in accordance with the solicitation and the COFC decision." E.g., id. at 76. In the letter, the DLA announced its intention to make a new award decision, but did not commit to conducting further negotiations. Id. In addition, the DLA requested "that offerors confirm the accuracy and validity of their proposals." Id. The DLA required that each offeror provide "an affirmative response . . . confirming that the information in the proposal remains accurate and extending the period of acceptance of your proposal to January 9, 2020." Id. "In the alternative, if your final proposal revision cannot be extended for this time period, or if circumstances have changed and your proposal is no longer accurate and valid, you must indicate that in your response. You also may request to have your offer withdrawn from consideration." Id.

      In response to the DLA's letter, [ ] of the seven offerors confirmed that their proposals were accurate and remained valid; nevertheless, [ ] of the seven offerors stated that they would like to submit revised proposals. See id. at 109-10 (memorandum summarizing the offerors' responses). After reviewing the offerors' responses, the DLA

4

"determined that it is in the best interest of the Government to open negotiations to afford offerors the opportunity to refresh their proposal information." Id. at 110.  The DLA memorandum cited both potentially available price reductions and changed conditions on the ground as support for its decision to modify the scope of the corrective action.  See id. at 110-11.  Based on these considerations, the DLA announced its intention "to conduct an additional round of limited negotiations with all offerors remaining in the procurement." Id. at 111.  The DLA described that process as follows:

> Offerors will be permitted to update and make changes to their Technical Proposals and Distribution Prices.  Offerors will not be asked to revise Product Prices or submit new item information.  That said, if the need for additional negotiations, to include the submission of revised manufacturer's quotes, is later determined to be in the Government's best interest, DLA Troop Support will perform those actions at that time.

Id.  The DLA then explained that it would conduct a reevaluation of the proposals, including a review of price negotiations, a new recommendation from the Source Selection Advisory Council, and a new, documented source selection decision.  See id.  The memorandum also stated that "DLA Troop Support's new award decision would take into consideration the decision of the COFC." Id.  Due to the expanded corrective action, the DLA revised its timeline for completing the effort to April 9, 2020.[3]  See id.

On November 22, 2019, the DLA sent letters to the offerors explaining the new corrective action plan.  See id. at 112-215.  The DLA wrote:

> With the reopening of negotiations, your firm is being given an additional opportunity to submit revisions to your business proposal and your technical proposal.  Regarding your business proposal, DLA Troop Support will only accept changes and/or updates to your Distribution Prices, Standard and Non-Standard and for all modes of transportation.  Regarding your technical proposal, you may address any aspect of your proposal that you wish to change, update, or that you otherwise would like to further explain.

Id. at 113.  All responses were due to be submitted to the DLA, in writing, no later than 3:00 p.m. eastern time on December 13, 2019.  See id. at 114.  That deadline was later extended to 3:00 p.m. eastern time on December 27, 2019, to allow offerors to respond to a number of clarifications provided by the DLA.  See id. at 254-77.  After the December 27, 2019 deadline had passed, the DLA again extended the deadline on December 30, 2019, to 3:00 p.m. eastern time on January 3, 2020.  See id. at 293-97.  And on December 31, 2019, the deadline was extended a final time due to technical difficulties, to 3:00 p.m.

---

[3]     On May 29, 2020, defendant filed a status report with the court stating that the agency now does not intend to make an award until [ ].  See ECF No. 82.

eastern time on January 6, 2020.  See id. at 298-306.  [ ] of the seven offerors submitted revised proposals, and [ ] offerors withdrew from competition.  See id. at 308-38; ECF No. 47; ECF No. 48; ECF No. 49.

Plaintiff filed this protest action on December 13, 2019, the initial due date for proposal revisions.  See ECF No. 1.  In the complaint, plaintiff alleges three counts.  In the first count, plaintiff seeks declaratory and injunctive relief on the basis that the "DLA's corrective action is not rationally related to the procurement defect identified by this court."  Id. at 17-20.  In the second count, plaintiff seeks declaratory and injunctive relief on the basis that the "DLA's decision to take corrective action that favors [intervenor-defendant] is arbitrary, capricious, an abuse of discretion, and unlawful."  Id. at 20-22.  And in the third count, plaintiff seeks declaratory and injunctive relief on the basis that the "DLA intends to waive a mandatory requirement of the solicitation for the benefit of only one offeror, [intervenor-defendant]."  Id. at 22-23.  Plaintiff has withdrawn the third count of its complaint, see ECF No. 58 at 23 n.6 (memorandum in support of plaintiff's motion for judgment on the AR), but proceeds on the first two.

II.     Legal Standards

In its complaint, plaintiff invokes this court's bid protest jurisdiction.  See ECF No. 1 at 3.  The Tucker Act grants this court jurisdiction

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement . . . without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C. § 1491(b)(1) (2012).

The court's analysis of a "bid protest proceeds in two steps."  Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005).  First, the court determines, pursuant to the Administrative Procedure Act's (APA) standard of review, 5 U.S.C. § 706 (2018), whether the "agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law."  Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 720 F.3d 901, 907-08 (Fed. Cir. 2013) (citing 28 U.S.C. § 1491(b)(4)).  An agency's decision meets this standard when the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).  In making this evaluation, the court considers "whether the agency has examined the

relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Cybertech Grp., Inc. v. United States, 48 Fed. Cl. 638, 646 (2001) (citations omitted).

If the court finds that the agency acted in error, the court then must determine whether the error was prejudicial. See Bannum, 404 F.3d at 1351. To establish prejudice, "the protester must show 'that there was a substantial chance it would have received the contract award but for that error.'" Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999) (quoting Statistica, Inc. v. Christopher, 102 F.3d 1577, 1582 (Fed. Cir. 1996)). "In other words, the protestor's chance of securing the award must not have been insubstantial." Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003).

Given the considerable discretion allowed contracting officers, the standard of review is "highly deferential." Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed. Cir. 2000). As the Supreme Court has explained, the scope of review under the arbitrary and capricious standard is narrow. See Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974). "A reviewing court must 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment,'" and "'[t]he court is not empowered to substitute its judgment for that of the agency.'" Id. (quoting Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416 (1971)); see also Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1368-69 (Fed. Cir. 2009) (stating that under highly deferential rational basis review, the court will "sustain an agency action 'evincing rational reasoning and consideration of relevant factors'") (citing Advanced Data Concepts, 216 F.3d at 1058).

The same "'highly deferential' 'rational basis' standard'" applies in the corrective action context. See Dell Fed. Sys., L.P. v. United States, 906 F.3d 982, 992 (Fed. Cir. 2018) (citation omitted); see also Jacobs Tech. Inc. v. United States, 100 Fed. Cl. 186, 190-91 (2011) (stating that "contracting officers are entitled to broad discretion in the procurement process, . . . including in their decisions to take corrective action") (internal citation omitted).

III.   Analysis[4]

    A.   Dell Federal Systems, L.P. v. United States

The animating dispute in this case relates to the proper interpretation and application of the precedential holding from Dell Federal Systems, L.P. v. United States, 906 F.3d 982 (2018), in which the United States Court of Appeals for the Federal Circuit articulated the standard for review of an agency's corrective action. In Dell Federal, the Federal Circuit reviewed a decision from this court that permanently enjoined the United States Army from proceeding with corrective action on a procurement for computer hardware. See Dell Fed., 906 F.3d at 986. This court "agreed that the Army had rationally identified procurement defects," but found that the "'Army's contemplated corrective action was overbroad.'" Id. at 989 (quoting the trial court's decision, Dell Fed. Sys., L.P. v. United States, 133 Fed. Cl. 92, 104 (2017)). The court also held that "[e]ven where an agency has rationally identified defects in its procurement, its corrective action 'must narrowly target the defects it is intended to remedy.'" Dell Fed., 133 Fed. Cl. at 104. The appellants then challenged this court's formulation of that "narrowly targeted" standard before the Federal Circuit. See Dell Fed., 906 F.3d at 990.

The Federal Circuit reversed this court's decision, holding that "[t]he Court of Federal Claims based its decision on an error of law because corrective action only requires a rational basis for its implementation." Id. at 991. The Federal Circuit explained that "[t]he rational basis test asks 'whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion.'" Id. at 992 (quoting Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1351 (Fed. Cir. 2004)). Rather than applying this rational basis test, this court had applied a "heightened 'narrowly targeted' standard," which the Federal Circuit concluded was "an overly stringent test for corrective action." Id. at 992-93 (citing Ala. Aircraft Indus., Inc.-Birmingham v. United States, 586 F.3d 1372, 1376 (Fed. Cir. 2009)).

The Federal Circuit also rejected appellees' argument that courts "should view the 'narrowly targeted' requirement not as a heightened standard but rather as an application of the rational basis standard." Id. at 993. According to the Federal Circuit, requiring a narrowly targeted solution to address a procurement defect "would undermine our

---

[4]   Plaintiff argues that it has standing to bring this protest action in its motion for judgment on the AR. See ECF No. 58 at 25-26. Defendant does not address the matter squarely, but it "agree[s] that [plaintiff] may generally challenge DLA's corrective action." ECF No. 66 at 24. Presumably defendant would not offer such an agreement if it meant to challenge plaintiff's standing. For its part, intervenor-defendant argues in the introduction section of its brief that "[plaintiff] lacks standing to bring this protest," based on [ ]. ECF No. 64 at 6-7. Intervenor-defendant, however, fails to include any further discussion or analysis of the issue. The court, therefore, considers plaintiff's standing undisputed, and finds it unnecessary to engage in a fuller analysis of the same.

deferential APA review, which statutorily mandates that we determine 'whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion.'" Id. at 994 (quoting Banknote, 365 F.3d at 1351).

      B.      The DLA's Corrective Action Has a Rational Basis

According to plaintiff, the DLA's corrective action in this case is irrational for three reasons: (1) the corrective action failed to adequately consider this court's August 29, 2019 decision, rendering it arbitrary, see ECF No. 58 at 30-31; (2) defendant "failed to consider the appropriate legal standard when determining the scope of its corrective action," id. at 30-32; and (3) "reopening the procurement is not rationally related to the single evaluation error identified by the court," id. at 31-35. Each of these issues identified by plaintiff is resolved in defendant's favor under what is, in the court's view, a proper reading of Dell Federal.

           1.      Plaintiff incorrectly defines the permissible scope of the corrective action

Both plaintiff's first and third arguments—that the corrective action did not adequately address this court's August 29, 2019 decision, and that the corrective action plan is not rationally related to the evaluation error identified by the court—hinge on plaintiff's flawed definition of the procurement defect that the DLA may permissibly address with the corrective action. Plaintiff argues that the evaluation error identified in this court's ruling is "the only procurement defect to be addressed by DLA's corrective action," and claims that "the record does not identify any other error in the procurement." Id. at 31. The court disagrees both factually and legally with plaintiff's assessment.

As an initial matter, both the corrective action memorandum and the addendum thereto explicitly state the DLA's intention to consider this court's opinion in conducting the corrective action. See ECF No. 46-1 at 62 (stating that the corrective action would be conducted "in a manner consistent with [this court's] decision," and that it will "incorporate the decision of the [court], and thereby preserve the integrity of the procurement process"); id. at 111 (stating that "DLA Troop Support's new award decision will take into consideration the decision of [this court]"). While plaintiff may have preferred a more detailed analysis on this point, the record demonstrates that the DLA did not "entirely fail[ ] to consider" this court's opinion in the context of its corrective action plan. Motor Vehicles Mfrs. Ass'n, 463 U.S. at 43. And to the extent plaintiff means to preemptively challenge a new award decision that fails to comply with the court's opinion, such a challenge is premature. See Sys. Application & Tech., Inc. v. United States, 691 F.3d 1374, 1383 (Fed. Cir. 2012) ("A claim is not ripe for judicial review when it is contingent upon future events that may or may not occur.").

The record also shows that the DLA transparently expanded its corrective action beyond addressing the evaluation error identified by this court.  In the first corrective action memorandum, the DLA anticipated that additional issues might arise during the course of the corrective action.  The memorandum noted the "limited nature of this corrective action," but it also stated the DLA's intention to "ensure the balance of the procurement is reviewed and any additional areas of concern are appropriately addressed."  ECF No. 46-1 at 62.  After receiving responses from [ ] of the seven offerors indicating a common desire to submit revised proposals that would include lower prices and address any changes to conditions on the ground, the DLA determined that a more extensive corrective action was appropriate.  See id. at 109-10.  In order to address these newly-identified concerns, the DLA issued an addendum to the corrective action memorandum, announcing its plan "to conduct an additional round of limited negotiations with all offerors remaining in the procurement," during which offerors could "make changes to their Technical Proposals and Distribution Prices" before the agency makes a new award decision.  Id. at 111.

As noted above, plaintiff argues that the evaluation error identified in this court's ruling is "the only procurement defect to be addressed by DLA's corrective action."  ECF No. 58 at 31.  Thus, according to plaintiff's formulation of the proper inquiry, the court should now analyze "whether the corrective action is 'reasonably' or 'rationally' related to" addressing the evaluation error identified in this court's August 29, 2019 decision.  ECF No. 65 at 10.  Defendant takes the opposite view, arguing that "[a]n agency may act to improve a procurement to achieve the best value for the Government even where there are no errors."  ECF No. 63 at 27.

The parties' extensive briefs on this issue belie its simplicity—this court is required to abide by the Federal Circuit's holding that "corrective action only requires a rational basis for its implementation."  Dell Fed., 906 F.3d at 991.  And as the Federal Circuit explained, "[t]he rational basis test asks 'whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion.'"  Id. at 992 (quoting Banknote Corp., 365 F.3d at 1351).  Put another way, as intervenor-defendant aptly stated, "a reviewing Court cannot set aside an agency's corrective action decision when the agency had a rational basis for that determination."  ECF No. 64 at 19.

While plaintiff claims to agree that the rational basis test applies here, it insists that—as applied—the rational basis test requires more than it plainly states.  Specifically, plaintiff argues that the court must not only determine whether the DLA's corrective action had a rational basis, but must also "assess[ ] whether [the challenged] action was 'rationally related to the procurement defect' that precipitated the corrective action."  ECF No. 65 at 9 (quoting Dell Fed., 906 F.3d at 999).  According to plaintiff, in this case, the court must limit its inquiry to deciding whether the DLA's corrective action is rationally related to the evaluation error identified in the court's August 29, 2019 decision.  See ECF No. 58 at 32-33.  To support this view, plaintiff cites to a long list of

decisions rendered by this court in which the court evaluated whether corrective action taken to address a procurement error had a rational basis. See id. at 33-34; ECF No. 65 at 8-15.

The flaw in plaintiff's logic is two-fold. First, underpinning its entire argument is the assumption that the only issue that the DLA is entitled to address with corrective action is the evaluation error identified by the court. See, e.g., ECF No. 58 at 28 (identifying the only error in this case as related to the "the agency's evaluation of proposals"); id. at 31 (stating that "the only procurement defect to be addressed by DLA's corrective action is DLA's improper rating of [intervenor-defendant] as 'Outstanding' under Factor I"). Starting from this premise, plaintiff argues that the expanded scope of the corrective action does not rationally relate to the evaluation error. See id. at 31-33. This, however, is an argument built on a faulty foundation. Defendant does not argue that it can take corrective action untethered to any problem with the procurement; rather, it argues that it is entitled to address the broader problem that the proposals were outdated with regard to distribution pricing and ground conditions in addition to addressing the evaluation error identified by the court. The court agrees with defendant, provided that broader corrective action satisfies the rational basis test.

And second, plaintiff's position effectively imports an additional requirement into the rational basis test, as articulated by the Federal Circuit in Dell Federal. As noted above, the rational basis test requires the court to ask the straightforward question of whether the DLA has "provided a coherent and reasonable explanation" for its corrective action plan. Dell Fed., 906 F.3d at 992 (citation and quotation marks omitted). It is, of course, possible to establish that an agency's corrective action was reasonable on the basis of its effort to address an identified error. And as plaintiff explains at length, this court has done so on a number of occasions. But a plain reading of the standard articulated in Dell Federal—a case in which the Federal Circuit rejected application of an "overly stringent test for corrective action"—does not require the more specific inquiry proposed by plaintiff.[5] Id. at 993 (citing Ala. Aircraft, 586 F.3d at 1376).

The Federal Circuit's definition of corrective action, as stated in Dell Federal, lends further support for this conclusion. The Federal Circuit defines corrective action as

---

[5] Plaintiff submitted the Federal Circuit's recent decision in Office Design Grp. v. United States, Case No. 2019-1337 (Mar. 6, 2020), as supplemental authority. See ECF No. 70. Plaintiff argues that the Office Design decision demonstrates that "this Court's analysis does not begin and end with the 'rational basis' test, as the Government and Intervenor suggest." Id. at 3. Instead, plaintiff argues for a two-step review. See id. In response, defendant argues that "Office Design neither involves a corrective action protest nor involves a protest challenging the rational basis of an agency action;" instead, the case "involves an assertion that an agency acted contrary to a provision of law." ECF No. 73 at 1. The court agrees that the difference in context matters, and finds that the decision in Office Design does not apply here in the manner advocated by plaintiff.

follows: "A 'corrective action in the bid protest context' is an 'agency action, usually taken after a protest has been initiated, to correct a perceived prior error in the procurement process, or, in the absence of error, to act to improve the competitive process.'"[6] Dell Fed., 906 F.3d at 986 n.1 (citing Dellew Corp. v. United States, 855 F.3d 1375, 1378 n.2 (Fed. Cir. 2017)). According to plaintiff, by relying on this definition, "the Government attempts to create a radical new rule for corrective action: '[a]n agency may act to improve a procurement to achieve the best value for the Government even where there are no errors.'" ECF No. 65 at 13 (quoting ECF No. 63 at 27). To the contrary, by relying on this definition, defendant abides by binding precedent. See also Guardian Moving & Storage Co., Inc. v. United States, 657 F. App'x 1018, 1023 (Fed. Cir. 2016) (stating that "agencies are 'allowed the discretion to review their own conclusions if they conclude a mistake has been made, or if further inquiry appears appropriate, provided the re-evaluation conforms with the solicitation, including any modifications to the solicitation and the evaluation process is conducted in a manner fair to all offerors'") (emphasis added) (quoting Glenn Def., 105 Fed. Cl. at 569); ManTech Telecomms. & Info. Sys. Corp. v. United States, 49 Fed. Cl. 57, 72 (2001) ("[I]t is important to recall that the government is not obliged to admit an error as a precondition to proposing corrective action . . ."), aff'd, 30 F. App'x 995 (Fed. Cir. 2002).

2. The DLA's corrective action satisfies the rational basis test

In this case, the corrective action for which defendant must provide a coherent and reasonable explanation is the DLA's decision to allow offerors to submit revised proposals, as well as its stated intention to address the evaluation error previously identified by this court. Defendant explains the reason for the DLA's decision as follows:

> [I]n response to this Court's prior decision, DLA initially intended to take limited corrective action to focus only on the specific error found by the Court, but DLA stated even then that it might expand the corrective action. DLA also informed offerors that it had "not made a determination as to whether further negotiations will be conducted."
>
> [ ] of seven offerors expressed interest in revising their proposals. After reviewing [the offerors' responses to the initial corrective action plan], DLA "determined that it is in the best interest of the Government to open

---

[6] Plaintiff inveighs against reliance on this definition on the basis that it appeared in a footnote. See ECF No. 65 at 12-13. Contrary to plaintiff's suggestion, however, the court will assign the same precedential value to the entire Federal Circuit decision in Dell Federal, as it is unaware of any basis for disregarding the portions of Federal Circuit decisions that appear as footnotes.

> negotiations to afford offerors the opportunity to refresh their proposal information." Over two years had passed since offerors revised their proposals (with many suggesting they could reduce their prices) and DLA was aware that various aspects of offerors' proposals no longer reflected the facts on the ground, including both [intervenor-defendant] and [plaintiff] potentially having issues with their proposed warehouse facilities.

ECF No. 63 at 27-28 (citations omitted). Defendant argues that "DLA's corrective action will improve the competitive process by allowing offerors to refresh their final proposal revisions submitted over two years ago (under the Solicitation that was issued over four years ago)." ECF No. 63 at 25-26.

The history of this procurement is a long and tortured one, as detailed by the court in both this opinion and the August 29, 2019 decision. See ANHAM, 144 Fed. Cl. at 703-09. The solicitation was issued more than four years ago, on December 18, 2015.[7] See ECF No. 34-1 at 92. Offerors submitted final revisions to their proposals on June 7, 2017. See ECF No. 40-7 at 418. Now, after multiple protests, the DLA seeks to make another award decision. In the court's view, it is coherent and reasonable for the DLA to both seek to correct the evaluation error previously identified by this court, and to allow limited revisions to proposals that are more than two years old in response to information from the offerors that both prices and ground conditions have changed.

Moreover, the explanation for its decision and the specific process proposed by the DLA for implementing corrective action are coherent and reasonable. The DLA limited the revisions to address the specific areas identified as deficient by the offerors, describing its plan as follows:

> Offerors will be permitted to update and make changes to their Technical Proposals and Distribution Prices. Offerors will not be asked to revise Product Prices or submit new item information. That said, if the need for additional negotiations, to include the submission of revised manufacturer's quotes, is later determined to be in the Government's best interest, DLA Troop Support will perform those actions at that time.

ECF No. 46-1 at 111. The DLA then explained that it would conduct a reevaluation of the proposals, including a review of price negotiations, a new recommendation from the Source Selection Advisory Council, and a new, documented source selection decision. See id. The memorandum also stated that "DLA Troop Support's new award decision [would] take into consideration the decision of the COFC." Id.

---

[7] In the court's August 29, 2019 opinion, it inadvertently transposed numbers in the date of the solicitation, and noted the date as December 15, 2018. ANHAM, 144 Fed. Cl. at 703. The court will correct the error by errata.

13

Based on the foregoing, the court concludes that the DLA's decision to allow offerors to revise their proposals in order to address the outdated information is reasonable, coherent, based on a consideration of relevant factors, and did not involve a clear error of judgment. As such, the court will not substitute its judgment for that of the agency. See Bowman, 419 U.S. at 285 ("A reviewing court must 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment,'" and "'[t]he court is not empowered to substitute its judgment for that of the agency.'") (quoting Citizens to Preserve Overton Park, 401 U.S. at 416).

### 3. The DLA did not fail to consider the proper standard

Plaintiff also argues that the DLA "failed to consider the appropriate legal standard when determining the scope of its corrective action." ECF No. 58 at 30. According to plaintiff, the corrective action is defective because it stated that the DLA's plan was "in the best interest of the government," but did not explicitly evaluate whether the plan was "rationally related to the procurement defect." Id. The court has already addressed the mistake plaintiff makes in its articulation of the rational basis test. Apart from that error, plaintiff offers no authority that would require the agency to explicitly apply the rational basis test in initiating the corrective action—as the rational basis test is the legal standard applied by the court in evaluating the agency's action. The fact that the agency's corrective action memorandum and addendum sought to determine the course that was in the agency's best interest does not preclude the court's determination that the same course meets the rational basis test, as set forth by the Federal Circuit in Dell Federal, a conclusion the court has reached in this case.

### C. The Corrective Action Does Not Unfairly Advantage Intervenor-Defendant

Plaintiff argues that the DLA's decision to allow proposal revisions was an impermissible attempt to ensure that intervenor-defendant would receive the contract award. See ECF No. 58 at 34-38. This contention is based on disclosures made by intervenor-defendant in its response to the DLA's October 11, 2019 letter announcing the corrective action. See id. (citing ECF No. 46-1 at 98-104). In the letter, intervenor-defendant reported that "[o]n September 25, 2019, the [Kuwait Ports Authority] engaged in an illegal and unwarranted seizure of [intervenor-defendant's] warehouse facility." ECF No. 46-1 at 99. "Notwithstanding that seizure," intervenor-defendant states that it "continues to perform its obligations under the bridge contract using [the] warehouse." Id. Intervenor-defendant has challenged the seizure in the Kuwaiti courts, and due to its confidence that it will ultimately succeed, [ ]. Id. [ ]. Id. at 100. [ ]. See id.

In addition to the warehouse disclosures, intervenor-defendant made the following comment in its response to the DLA's corrective action letter:

Clearly, [intervenor-defendant's] most relevant contracts at this point are the

>initial . . . contract awarded under the present solicitation and the bridge contract, which [intervenor-defendant] is currently performing . . . . Although DLA could consider these contracts as part of the past performance evaluation without [intervenor-defendant] modifying its proposal, [intervenor-defendant] would have to modify its proposal for DLA to consider these contracts under the experience factor.

Id. at 101.

According to plaintiff, this information from intervenor-defendant was the only aspect of the procurement that changed between the time the DLA initially announced its corrective action and when it issued the addendum allowing for proposal revisions. See ECF No. 58 at 37-38. Plaintiff argues that intervenor-defendant's response made it clear to the DLA that "absent a reopening of the competition, DLA would have to significantly lower (if not rate as "Unacceptable") [intervenor-defendant's] Factor I rating." Id. at 38. Plaintiff even claims that without a revised proposal from intervenor-defendant, the result of the technical evaluation "would compel an award to [plaintiff]." Id. Based on the foregoing, plaintiff alleges that the "DLA took action to avoid an award to [plaintiff] and ensure that [intervenor-defendant], DLA's preferred contractor, could stay in the running for award." Id.

Plaintiff is correct that the DLA is required to treat all offerors fairly, see 48 C.F.R. § 1.102(b)(3), and that the agency cannot use the corrective action "as a vehicle to steer a contract toward or away from a particular contractor," ManTech, 49 Fed. Cl. at 75. The record in this case, however, does not convince the court that the DLA violated either of these precepts. Under Federal Circuit precedent, in order to overcome the presumption of regularity afforded to government officials and to demonstrate agency bias, a protester must "offer clear and convincing evidence that the [agency] did not act in good faith." Croman Corp. v. United States, 724 F.3d 1357, 1364 (Fed. Cir. 2013). Plaintiff's assertion that the DLA decided to allow revised proposals in an attempt to advantage intervenor-defendant is more innuendo than evidence. First, the record demonstrates that all seven offerors were afforded the same opportunity to submit revisions. See ECF No. 46-1 at 112-215. Second, intervenor-defendant was not the only offeror that expressed a desire to revise its proposal. See id. at 109-10 (memorandum noting that [ ] of the seven offerors suggested revisions). As such, intervenor-defendant's revisions were clearly not the only change to which the DLA was responding when it decided to allow revised proposals. And finally, plaintiff has presented no record evidence that intervenor-defendant is the agency's "preferred contractor." ECF No. 58 at 38. Absent any evidence of favoritism, the court sees both intervenor-defendant's warehouse issues and its more recent, relevant contract performance, as changed

circumstances that the DLA might legitimately wish to consider in its evaluation.[8]

To the extent that plaintiff's bias claims are an attempt to preemptively challenge the agency's evaluation of the revised proposals, the court declines to entertain the challenge as premature. The court will not engage in speculation about either the outcome of the agency's award decision or the content of its evaluation. See Sys. Application, 691 F.3d at 1383 ("A claim is not ripe for judicial review when it is contingent upon future events that may or may not occur.").

        D.        Injunctive Relief

Plaintiff has not succeeded on the merits of its protest. "Because proving success on the merits is a necessary element for a permanent injunction," no injunctive relief is warranted in this case. Dell Fed., 906 F.3d at 999.

IV.       Conclusion

Accordingly,

(1)    Plaintiff's motion for judgment on the AR, ECF No. 57, is **DENIED**;

(2)    Defendant's cross-motion for judgment on the AR, ECF No. 63, is **GRANTED**;

(3)    Intervenor-defendant's cross-motion for judgment on the AR, ECF No. 64, is **GRANTED**;

(4)    The clerk's office is directed to **ENTER** final judgment in favor of defendant and intervenor-defendant, and to **DISMISS** plaintiff's complaint, with prejudice; and

(5)    On or before **July 24, 2020**, the parties shall **CONFER** and **FILE** a **notice**, attaching a proposed redacted version of this opinion, with any

---

[8] Defendant also raises a standing issue in the section of its brief in which it addresses plaintiff's bias argument. It argues that "[plaintiff] has no standing to challenge DLA's decision to allow offerors to revise their price proposals based on the prior release of [intervenor-defendant's] price." ECF No. 63 at 29. In response, plaintiff states: "The Government mischaracterizes [plaintiff's] MJAR as arguing that the corrective action is unfair to [intervenor-defendant] because [intervenor-defendant's] price has been released. [ECF No. 63 at 29]. [Plaintiff], of course, makes no such argument." ECF No. 65 at 24. Because plaintiff disavows the argument for which defendant claims it lacks standing, the court need not engage in any further discussion of the issue.

material deemed proprietary blacked out, so that a copy of the opinion can then be made available in the public record of this matter.

IT IS SO ORDERED.

s/Patricia E. Campbell-Smith  
PATRICIA E. CAMPBELL-SMITH  
Judge